IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**RONNIE E. CHANDLER,**

        **Plaintiff,**

v.                                                         No. CIV-13-1103 LAM

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 14)*, filed September 19, 2014 (hereinafter "motion"). On November 14, 2014, Defendant filed a response to the motion [*Doc. 15*], and, on November 26, 2014, Plaintiff filed a reply [*Doc. 16*]. In accordance with 28 U.S.C. § 636(c)(1), the parties have consented to the undersigned to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 4* and *6*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 11*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") should be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

## I. Procedural History

On March 3, 2011, Plaintiff filed an application for Disability Insurance Benefits (hereinafter "DIB") (*Doc. 11-2* at 35-38), and, on March 8, 2011, Plaintiff filed an application for Supplemental Security Income (hereinafter "SSI") (*Doc. 11-5* at 47-55). In each application, Plaintiff alleged that he became disabled on July 31, 2010. [*Doc. 11-2* at 35] and [*Doc. 11-5* at 47], respectively. Plaintiff stated that he became disabled due to: "Blood clot to heart, stints in legs[,] foot problems[,] Stress, Panic Attacks, Ulcers in legs." [*Doc. 11-2* at 78]. Both of his applications were denied at the initial level on June 21, 2011 (*id.* at 18-21), and each application was denied at the reconsideration level on October 4, 2011 (*id.* at 7-9 and 29-32, respectively). Pursuant to Plaintiff's request (*id.* at 3-4), Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing on September 12, 2012. [*Doc. 11-5* at 56-81]. At the hearing, Plaintiff was present, was represented by counsel, and testified. *Id.* at 58, 61-75. In addition, Vocational Expert (hereinafter "VE"), Thomas Greiner, was present and testified. *Id.* at 58, 75-79.

On January 14, 2013, the ALJ issued her decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled. [*Doc. 11-1* at 13-24]. Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 9), and, on September 11, 2013, the Appeals Council denied Plaintiff's request for review (*id.* at 5-7), which made the ALJ's decision the final decision of the Commissioner. On November 14, 2013, Plaintiff filed his complaint in this case. [*Doc. 1*].

## II. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied.

2

*Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on September 13, 1972. [*Doc. 11-2* at 35]. Plaintiff has worked as a "Journey Man Electrician" in the construction business. [*Doc. 11-2* at 79]. Plaintiff alleges that he is unable to work due to: "Blood clot to heart, stints in legs[,] foot problems[,] Stress, Panic Attacks, Ulcers in legs." *Id.* at 78. Plaintiff's medical records include: records from Karen

4

deGenevieve, CFNP (*Doc. 11-3* at 21-22, 59-62, 82-87, and *Doc. 11-4* at 11-23); a Psychiatric Review Technique by Charles Mellon, M.D., dated June 20, 2011 (*Doc. 11-4* at 30-43); a Mental Disability Evaluation by Mark D. Beale, M.D., dated May 10, 2011 (*id.* at 45-47); and a Physical Residual Functional Capacity Assessments by Samuel Pallin, M.D., dated April 25, 2011 (*id.* at 48-55). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of July 31, 2010. [*Doc. 11-1* at 15]. At step two, the ALJ found that Plaintiff has the following severe impairments: "hypercoagulable state with inferior vena cava (IVC) filter placement, history of deep vein thrombosis (DVT), nerve damage with denervation of the left leg, and obesity." *Id.* At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 17-18.

Before step four, the ALJ determined that Plaintiff has the RFC to occasionally lift and/or carry ten pounds, to stand and/or walk a total of two hours in an eight-hour workday (with normal breaks), and to sit for six hours in an eight-hour workday (with normal breaks). *Id.* at 18. The ALJ further determined that Plaintiff should never balance, kneel, or crawl, can only occasionally climb stairs and stoop, requires the use of a cane to ambulate, and "should avoid all hazards in the workplace, including unprotected heights and dangerous moving machinery." *Id.* In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments might be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the

reasons explained in this decision." *Id.* at 21. The ALJ stated that "the record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or even has limitations greater than those determined in this decision." *Id.* The ALJ stated that, in a letter received after the hearing, Certified Nurse Practitioner Karen deGenevieve opined that Plaintiff is not able to work due to multiple medical conditions, and states that Plaintiff requires chronic pain management. *Id.* at 22 (citing *Doc. 11-3* at 21-22). The ALJ stated that, although the opinion is not from an acceptable source, the ALJ considered the treatment history Plaintiff has with Ms. deGenevieve, and found that her opinion is on an issue reserved for the Commissioner and is unsupported by the record. [*Doc. 11-1* at 22]. The ALJ stated that she gave great weight to the opinions of the state agency medical consultants even though she found that Plaintiff is more limited than the findings of those consultants. *Id.* At step four, the ALJ found that Plaintiff is unable to perform his past relevant work, so the ALJ proceeded to the fifth step. *Id.*

At the fifth and final step, the ALJ noted that Plaintiff was born on September 13, 1972, so he was 37 years old on the alleged disability onset date, which is defined as a younger individual. *Id.* The ALJ noted that Plaintiff has at least a high school education and is able to communicate in English. *Id.* The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." *Id.* at 23. The ALJ stated that the VE was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and RFC as Plaintiff, and which require skills acquired in Plaintiff's past relevant work but no additional skills, and the VE testified that the representative occupations such an individual could perform include: a trouble locator (test desk), a final assembler, and a nut sorter. *Id.* The ALJ stated that "the [VE's]

6

testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* at 24. The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V.   Analysis

In his motion to reverse or remand, Plaintiff contends that the ALJ erred by: (1) failing to properly consider Ms. deGenevieve's opinions (*Doc. 14* at 14-15); (2) failing to properly consider Plaintiff's limitations in his abilities to sit, lift, carry, and bend (*id.* at 17-18); (3) failing to properly assess Plaintiff's credibility (*id.* at 18-19); and (4) failing to properly consider Plaintiff's mental limitations (*id.* at 19-20). In response, Defendant contends that the ALJ properly discounted Ms. deGenevieve's opinion, and that the ALJ properly determined Plaintiff's RFC. [*Doc. 15* at 3-7]. In Plaintiff's reply, Plaintiff advises the Court that his second application for DIB has been granted, so Plaintiff has been deemed disabled as of January 15, 2013. [*Doc. 16* at 1]. Plaintiff states that this case, therefore, is for the closed period of benefits from July 31, 2010 (Plaintiff's alleged disability onset date) through January 14, 2013 (the day before the date he has been deemed disabled). *Id.*

### A.   Ms. deGenevieve's Opinion

Plaintiff contends that the ALJ erred in her consideration of Ms. deGenevieve's opinion for two reasons. First, Plaintiff contends that the ALJ erred in stating that the record does not contain any opinions from treating or examining physicians indicating that Plaintiff is disabled or even has greater limitations than those found by the ALJ in her RFC determination, because this statement ignores Ms. deGenevieve's opinion that Plaintiff is unable to work. [*Doc. 14* at 14-15]. Second, Plaintiff contends that the ALJ erred by failing to describe the evidence that is contrary to Ms. deGenevieve's opinion, making it impossible for Plaintiff to refute the ALJ's conclusions or

7

for the Court to meaningfully review the ALJ's findings.  *Id.* at 15-16.  In response, Defendant contends that the ALJ properly discounted Ms. deGenevieve's opinion that Plaintiff is unable to work because that is an issue reserved for the Commissioner, and because Ms. deGenevieve is not an acceptable medical source.  [*Doc. 15* at 3-4].  Defendant further contends that the ALJ properly observed that Ms. deGenevieve's opinion is not supported by the record, and provides examples of opinions that are contrary to Ms. deGenevieve's opinion.  *Id.* at 4.  In Plaintiff's reply, he refutes Defendant's attempt to supply the reasoning for the ALJ's decision, and contends that the evidence cited by Defendant as contrary to Ms. deGenevieve's opinion actually supports her opinion.  [*Doc 16* at 2-4].

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  *See also* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations.").  The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any.  Soc. Sec. Rep. 96-8p at *5.  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Id.* at *7.  The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions. *Id.*  Because the ALJ must consider the whole record, she is prohibited from picking and choosing

"among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted).  When there are multiple opinions regarding medical severity and functional ability from different sources, the ALJ must explain the weight given to each source's opinions.  *Hamlin*, 365 F.3d at 1215 (citation omitted).

Here, the ALJ noted that Ms. deGenevieve opined that Plaintiff was unable to work due to multiple medical conditions and requires chronic pain management, but the ALJ rejected this opinion stating: "Although this opinion is not from an acceptable medical source, I have considered all the treatment history [Plaintiff] has with Ms. [d]e[G]enevieve, as discussed in detail above in considering her lay opinion on an issue reserved to the Commissioner and is unsupported by the record." [*Doc. 11-1* at 22].  The ALJ noted earlier in her opinion that Ms. deGenevieve found that Plaintiff was doing better with the exception of no improvement to his left leg, continues to take Oxycodone for pain and Lyrica for neuropathy, and was doing well with his anti-coagulation therapy and had experienced no problems with clotting.  *Id.* at 19 (citing *Doc. 11-4* at 17, *Doc. 11-3* at 86, and 82).  However, the ALJ did not note or discuss Ms. deGenevieve's findings of anxiety, fatigue, insomnia, leg cramps, neuropathy, back pain, problems walking, no feeling in left foot, depression, and that oxycodone is not very helpful for pain in Plaintiff's left leg.  *See* [*Doc. 11-3* at 59-60, 82-86] and [*Doc. 11-4* at 22].  The ALJ's failure to explain why she chose to rely on some findings by Ms. deGenevieve and not on others is legal error.  *See* Soc. Sec. Rep. 96-8p at *7 (The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"); *see also Carpenter*, 537 F.3d at 1265 (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").  Moreover,

9

Defendant's attempt to supply the ALJ's reasoning for her findings (*see Doc. 15* at 4) is an impermissible *post hoc* rationalization. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted).

In addition, the ALJ's rejection of Ms. deGenevieve's opinion because she is not an acceptable medical source is not properly supported. Pursuant to Soc. Sec. Rep. 06-03p, 2006 WL 2329939, at *4-5, ALJs must consider the following factors, when relevant, in evaluating medical sources who are not "acceptable medical sources:"

(1) How long the source has known and how frequently the source has seen the individual;

(2) How consistent the opinion is with other evidence;

(3) The degree to which the source presents relevant evidence to support an opinion;

(4) How well the source explains the opinion;

(5) Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

(6) Any other factors that tend to support or refute the opinion.

While the ALJ stated that she considered the treatment history Plaintiff has with Ms. deGenevieve (*see Doc. 11-1* at 22), the ALJ did not discuss whether Ms. deGenevieve's opinions are consistent with other evidence, whether Ms. deGenevieve presents relevant evidence to support her opinion, or whether she has a specialty or area of expertise related to Plaintiff's impairments. The Court finds that the ALJ's failure to do so is legal error. For these reasons, the Court finds that the ALJ

erred in her consideration of Ms. deGenevieve's opinions and, on remand, should consider her opinions in accordance with Soc. Sec. Rep. 96-8p and Soc. Sec. Rep. 06-03p.

### B. The ALJ's RFC Findings

Next, the Court considers Plaintiffs' contentions that the ALJ failed to properly consider Plaintiffs' limitations in his abilities to sit, lift, carry, bend and his mental limitations. First, Plaintiff contends that the ALJ erred by failing to explain why she did not include in her RFC determination Dr. Pallin's findings that Plaintiff should sit no more than two hours at any one time. [*Doc. 14* at 17] (citing *Doc. 11-4* at 49). The findings of state agency medical or psychological consultants are not binding on an ALJ; however, they are medical opinion evidence which an ALJ must consider, except as to the ultimate determination of whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). In his Physical RFC Assessment of Plaintiff, Dr. Pallin opined that Plaintiff could sit for about six hours in an eight-hour workday, with normal breaks, and, in the section asking him to cite the specific facts upon which his conclusions are based, he stated that "[Plaintiff] should sit no more than 2 hours at any one time." [*Doc. 11-4* at 49]. The Court finds that Dr. Pallin's opinion is consistent with the ALJ's RFC determination that Plaintiff can "sit for six hours in an eight-hour workday (with normal breaks)," because "normal breaks" accounts for the limitation by Dr. Pallin that Plaintiff should not sit for more than two hours at any one time. *See* Soc. Sec. Rep. 96-9p, 1996 WL 374185, at *6 (explaining that the breaks allowed for a person who can sit for six hours of an eight-hour workday would be "at approximately 2-hour intervals"). The Court, therefore, finds no error in the ALJ's consideration of Dr. Pallin's opinion regarding Plaintiff's sitting limitations, and this claim should be denied.

Second, Plaintiff contends that the ALJ erred by failing to explain how Plaintiff can lift and carry up to ten pounds in light of her finding that Plaintiff needs a cane to ambulate. [*Doc. 14*

at 17-18]. In response, Defendant contends that the ALJ did not err in finding that Plaintiff can lift and carry up to ten pounds, and also requiring that Plaintiff needs a cane to ambulate, because Plaintiff fails to provide support for his contention that he cannot carry objects in one hand, and because the medical evidence does not support such a finding. [*Doc. 15* at 6]. Plaintiff does not address this claim in his reply. The Court agrees with Defendant that Plaintiff fails to provide any support for his contention that he cannot lift or carry up to ten pounds even though he needs a cane to ambulate. Moreover, Plaintiff fails to show how his need to ambulate with a cane affects any of the three jobs identified by the VE that Plaintiff could perform. *See, e.g., Martinez v. Astrue*, No. 08-2197, 316 Fed. Appx. 819, 825, 2009 WL 721687 (10th Cir. March 19, 2009) (unpublished) (rejecting the claimant's claim that the need to use a cane precludes sedentary work because she needs two hands free to carry some objects in some sedentary jobs, on the grounds that the claimant "has advanced no argument that any of the three sedentary jobs the VE identified . . . are so affected"). The Court, therefore, finds that this claim should be denied.

Third, Plaintiff contends that the ALJ erred in her RFC determination by failing to include any limitation on Plaintiff's ability to bend, even though Plaintiff has a stent in the upper part of his thigh that he reported makes him unable to bend. [*Doc. 14* at 18] (citing *Doc. 11-3* at 5). Plaintiff provides no support for his contention that the ALJ's failure to account in her RFC determination for a statement Plaintiff made in the written remarks section of a disability report was in error, and fails to show that this statement is supported by any medical evidence in the record. Moreover, Plaintiff again fails to show how this limitation affects any of the three jobs identified by the VE that Plaintiff could perform. For these reasons, the Court finds that this claim should be denied.

Fourth, Plaintiff contends that the ALJ erred in her RFC determination by failing to asses any limitations from Plaintiff's mental impairments. [*Doc. 14* at 19-20]. Plaintiff contends that the ALJ erred by failing to account for Dr. Beale's diagnosis of Plaintiff with depression, and assessment of his GAF at 30,[1] and by failing to account for Ms. deGenevieve's findings relating to Plaintiff's mental impairments. *Id.* In response, Defendant contends that GAF scores do not necessarily relate to whether a claimant is disabled, that Dr. Beale also indicated that Plaintiff previously functioned at a GAF of 70, reported that Plaintiff was factitious or malingering, and opined that Plaintiff had the mental capacity to perform work-related activities. [*Doc. 15* at 7] (citing *Doc. 11-4* at 46-47). The Court has already found that the ALJ erred in her consideration of Ms. deGenevieve's opinions, including those relating to Plaintiff's mental impairments. Similarly, the Court finds that the ALJ erred by failing to explain why she chose to rely on some findings by Dr. Beale and not on others. While the ALJ noted the discrepancy between Dr. Beale's finding of a GAF score of 30 and his noting that Plaintiff's past rating was a score of 70, and the ALJ noted that Plaintiff's counsel at the hearing objected to the observations made by Dr. Beale, the ALJ merely stated that she overruled Plaintiff's counsel's objection while noting and considering the inconsistencies Plaintiff's counsel identified. *See* [*Doc. 11-1* at 20]. However, the ALJ does not explain why she rejected Dr. Beale's findings regarding Plaintiff's mental impairments, and Defendant's attempt to supply that explanation (*see Doc. 15* at 7) is an impermissible *post hoc* rationalization. *See* Soc. Sec. Rep. 96-8p at *7 (The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were

---

[1] The Global Assessment of Functioning (hereinafter "GAF") score is a measurement of the clinician's judgment of an individual's psychological, social and occupational functioning, and should not include impairment in functioning due to physical or environmental limitations. DSM-IV-TR at 32. A GAF score within the range of 21-30 indicates that "[b]ehavior is considerably influenced by delusions or hallucinations," or "serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation)," or "inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." *Id.* at 34.

13

considered and resolved"), *Carpenter*, 537 F.3d at 1265 (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), and *Robinson*, 366 F.3d at 1084 (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted). For these reasons, the Court finds that the ALJ erred in her consideration of Dr. Beale's opinions and, on remand, should consider his opinions in accordance with Soc. Sec. Rep. 96-8p and other relevant law.

### C.   Plaintiff's Remaining Claim

Because the Court finds that Plaintiff's case should be remanded for further consideration of the opinions of Ms. deGenevieve and Dr. Beale, the Court finds that it is unnecessary to reach Plaintiff's remaining claim that the ALJ erred in her credibility assessment because that claim may be affected by the ALJ's findings on remand. *See Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider the opinions of Ms. deGenevieve and Dr. Beale, as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 14)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order. A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes a. Martinez*
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**